We'll hear argument next in Case 16-1144, Marinello v. United States. Mr. Hellman. Hellman, Thank you, Mr. Chief Justice, and may it please the Court. When Congress made it a felony to obstruct the due administration of the tax code, it was not creating an all-purpose tax crime. It was borrowing from a statute that prohibited the obstruction of a pending proceeding. This Court normally presumes that borrowed language carries its meaning with it, and that has to be the case here. For without that limitation, obstruction would swallow up the other crimes that Congress simultaneously enacted, and in particular, it would obliterate the careful line that Congress drew between misdemeanors and felonies. Indeed, the government's interpretation is so broad that it would show entirely legitimate conduct that Congress never intended to penalize. Ginsburg. What lawful conduct would the government's reading put at risk? Hellman, Certainly. There's a whole range because obstruction on their definition is so broad. For example, you could imagine a situation, I'll take an everyday taxpayer, someone who pays their gardener, say, in cash, which is one of the predicate acts in this case as well. Paying in cash isn't necessarily illegal under the tax laws, but the test that the government would have is if by paying someone in cash, you're making it harder for the IRS to assess perhaps your tax liability or perhaps the tax liability of the person that you are paying, and at that point, the only question that remains is mens rea. Why did you do it? Did you do it for the purpose of obtaining a nonlawful benefit? And even that benefit need not even be your own under the government's reading. It could be the benefit of the gardener. Or to take another example, imagine a taxpayer who says, I'm going to keep every document the law requires under the code. I'll keep every document, but no documents more. If the IRS ever came back and looked at that person's tax position, they might say your failure to keep these documents that aren't otherwise required hindered us in our ability to assess your taxes. At that point, again, the only question becomes the why, the mens rea. And with a felony prosecution on the line, and with so many acts, the actus reis is being so broad, anything that hinders the IRS's ability to carry out a code of the statute. Sotomayor, My problem is that I have a second question. Fisher, Sure. Sotomayor, I have a lot of hypotheticals under your definition of what this section means that wouldn't be covered. So how about if an individual knows that the IRS is in the presence of, in the process of assessing his taxes, and in some way obstructs that process? Or an agent, the agent in 2004, called the defendant and said, you know, I'm deciding whether to open an investigation. I haven't, but I'm just thinking about it. I understand you have this business, and I don't see any tax returns. And your client answered the way he first did. I make less than $1,000. I don't have to file. And the agent closes the file and says, I'm not going to investigate this. Under your theory, that direct obstruction would not be actionable. Fisher, It would be several other crimes, as you describe it. It sounds like tax evasion, if there's a deficiency and an evasive act in connection with it. It could be a false statement to the IRS. But Congress knows how to write a pending proceeding requirement. If you think back to the statute at issue in Arthur Anderson, Section 1512, another obstruction statute that applies in cases of corruption to proceedings, the 1512f, which Congress enacted as part of Sarbanes-Ockley, says the proceeding need not be pending or even about to be instituted. Now, this Court Wait a minute. Yes, it can do that sometimes. It can do that. It doesn't other times. It doesn't other times. So is this one of those other times? Well, I think the right way to understand it is Congress is the need not be pending language was a product of the 1980s revision to the statute and really started to apply to documents in Sarbanes-Ockley. Sotomayor, do you think the word administration, to administration of this title, does any work in the interpretation? It seems to me that one could say that the example I gave is an actual affirmative act by the agency. It is the agent is calling and doing his work under the act, but that what you do outside of interacting directly with the agency is more omission, which is not the administration of the act. Could that line be drawn? I don't that's certainly not the line the government's offering, but it's not the line the government's offering, but yours is your broadness is sweeping up a lot of conduct that I think could be perceived as active obstruction of the work of the direct work of the agency. An agent calls you and you mislead them. Well, a couple of responses. As I said, those are covered by other crimes in the statute, false statements. It could even be covered by the officer's clause of this statute. But I think the key for this is, in some sense, and I think the point of your question is, not paying your taxes, failing to file a return, failure to make a payment, we would concede is in some sense obstruction of the administration of the code. But that can't be what Congress had in mind for this statute, because we know what they thought the penalty for those crimes should be. They should be a misdemeanor. Those people should not be branded as felons. It's wrong, it's a crime, but it's a misdemeanor, punishable by one year. And, you know, essentially on one page of the code, they're calling this conduct a misdemeanor. And then on the government's view, actually, it turns out that it turns out to be felony obstruction. And these are provisions that were the product of an intense, multiyear process of reforming the tax code, where Congress specifically debated back and forth between the House and the Senate about whether some of these crimes should be classified as misdemeanors or felonies. And so I think when you're trying to read a statute as a whole, and here the need to do that is at its apex, because we're not talking about different provisions that were enacted over a series of decades. This was Congress's concerted attempt to codify and calibrate the penalties that it wanted. And then to find out that actually everything turns out to be a felony, because in every any act that violates a tax law could in some sense be meant, understood to be obstructing the administration of the code, that's not a plausible way to read a statute. Mr. Helman, I think that's fair. Roberts, you raised that specter in your brief. In your experience, is that happening on the ground? I mean, is it the case that you find indictments, excuse me, always tacking on to the charges under this provision? Yes, Your Honor, and I think the tax amici and other amici who have filed in this case speak to that. I took a look, and this is just my own personal review of the cases, in the beginning in the really in the 90s and then in the 2000s, you start to see 7212 obstruction charges brought in. There's hundreds of cases. You can go online and just look for where those charges have been brought, even in reported cases. And as we discussed in the brief, the predicates are now becoming ones in which failure to file a return is becoming a predicate, failure to pay taxes is becoming a predicate. If I could go to your first example. I just often wondered this. I think, remember the gardener? Yes. Suppose you hire somebody to shovel your snow off your steps every three weeks or so or every week, and the gardener does some gardening, burns some leaves, and you pay him more than $600 over the year, then I guess you're required to file a 1099 form. That's right, which is a law. I don't know people who do. I mean, maybe everybody in the country is a lawbreaker, but I mean, if their interpretation is correct, in your view, that would give them the power in their discretion to indict, I won't say half the country, but a very significant number of people. Is that right? Yes. That is correct. If they know of this requirement and if they want to help the gardener or whatever. That's correct. And I think another one. And that is right. You're sure that's right? Yes, that is correct, because it comes down to the mens rea of the person who's about to file. Well, they want to help the gardener, and they know about it. That's right. And I think another one. Mr. Hillman, I mean, I share your concern that if this statute is read in its broadest possible literal sense, it has a really staggering sweep. But I wonder if your interpretation really solves the problem, because can't the same sorts of things happen after a proceeding has commenced? Let's say somebody is being audited, and eventually the person comes up with the records that the auditor needs, but they're all scrambled up. And it looks like the person is late in providing them and misses meetings and just is very difficult. You could get the same situation there, couldn't you? I suppose you could, but there's a difference as to why I think the statute ought to tolerate prosecution in that scenario, which is where there's been a formal notice of audit, and someone has been given questions by the government and needs to respond in a reasonable manner to them. You can understand why Congress wanted to make that a crime distinct from, maybe on top of, other crimes that a person has committed. But if we're talking about the maintenance of records prior to the initiation of that proceeding, then there are many other crimes that do cover record-keeping and, of course, your obligation to pay taxes. But those are generally, with the exception of tax evasion, generally not felonies, and they generally have a lower sentence than the one here. So I do take your point that there could be the potential for abuse, even under our interpretation, but I do think that it's significantly narrowed just for the reasons that I said. Mr. Hellman, there are obvious reasons to search for a limiting interpretation here. I guess the question is why your limiting interpretation, and obviously you talked about this in your brief, but I just want to give you an opportunity now to try to convince me, because right now I feel as though it comes out of thin air. It doesn't have any grounding in the text of the statute, and I guess I'm not seeing quite how the precedent gets you there. So ---- Hellman, I think the key reasons why we would think that Congress had 1503 in mind when it was talking, when it was enacting 7212 are the following. You've got a statute, 1503, enacted just a few years before, six years before. It doesn't just talk about obstruction of the due administration of something. It's got that two-part structure with officers in the first half, administration in the second. It's got those same verbs to impede or intimidate the officer or impede or obstruct the proceeding, and you also have the same means by which you're doing it. So you put that all together, and on top of that, the fact that there's nothing unusual about obstruction statutes having proceedings as their focus. There are several obstruction statutes after 1503 in the Code that all talk about obstruction of proceedings. So when you talk about obstruction of the due administration, it's sort of a natural marriage of that concept to proceedings. Now, there's no legislative history that speaks to this one way or the other. We certainly can see that. Ginsburg. But wasn't there the predecessor of 1503? It was oriented toward courts. It was expressly said, obstruction in a court, in effect. That's correct. But when Congress recodified that statute six years before 7212, they said that they were not making any substantive changes. So that was the language on the shelf if you wanted to have a two-part obstruction statute, one for the officers, one for the due administration. It's really the model. And I don't think that word choice can be explained by coincidence. And then, of course, you have the problem of, again, what would the government's alternative interpretation puts a code that would stretch across this entire table, any violation of it, which is potentially a felony. If I would, I want to go back to one other way in which, and this is not just an omissions point, this is an affirmative acts point, 7205 in the tax code, if anybody has ever been an employee in this country, when you start your job, you fill out the W-4 form where you say how many dependents you have, which controls how much withholding your employer will take out of your paycheck. I, too, know many people who don't put down the true number of dependents that they have in order to affect the withholding that they get. In some sense, that is an unlawful benefit. Money is being not being withheld, that should be. But we know that Congress wanted to punish that as a misdemeanor, not a felony. Now you think a lot of people do that? I mean, you've got three children and they say they've got five? In my experience, well, in any case. Well, your experience. I'm sorry, I'm sorry, I'm sorry. I mean, the people who get caught come to you, so in your experience, you see a lot. There may be a category problem there. I agree. There are people who list their dogs as dependents. I'll defer to Justice Ginsburg on that. I wasn't thinking of those people. I just think that there are many, many, many, many regulations in the code that seem to be quite trivial to an ordinary person, and they might, in fact, not pay that much attention to every form, and moreover, maybe they even want to help Ligardner. All right? Now, I think there are many such people in the 1099 case, but I don't know. That's why I asked you whether it was an appropriate example. And I do believe that it is one. Mr. Hubman, what role should Lennity play here, if any? Well, I think this Court's decisions in Aguilar and Arthur Anderson sort of point the way in that direction. We haven't made a constitutional argument in this case that it would be unlawful, unconstitutional for Congress to write a statute, the statute that the government says they wrote here. Saving that for the next case. We'll save that for the next case. But what we have most definitely argued in this case is that, as the Court explained in Aguilar, before this Court will assume that Congress meant to felonize every immoral act under the sun, we're going to want them to say that a little bit more clearly than they did in statute. Breyer. But how did they in Aguilar? I mean, I took the – I read the language in Aguilar, and I thought it was very helpful to your case. The statute's identical, virtually except administration of justice instead of administration of this title. Correct. And then it's quite limited how they interpreted it, but I'm not totally clear as to what significant – they said something about a nexus, but a nexus to what? I mean, and what's your understanding of that? So as I read Aguilar, it's a nexus to a pending proceeding. So in that case, the defendant lied, that was conceded, to an FBI agent, but it wasn't clear that those statements were ever going to get into court, into a grand jury proceeding. They might or might not in the words of the Court. And what the Court – So your argument is nexus to a pending proceeding interpreted with the same language except it says administration of justice. Should lead us to say nexus to a pending proceeding in a statute that's identical, but the words are administration of this title. Yes. Is that the argument? That is. And again, to respond to Justice Gorsuch's question, the Court has proceeded carefully with lenity in mind when it's looked at a statute that the government has said covers everything that one might want to punish, but doesn't clearly say that that is what we intend to punish. And both considerations of fair notice and, as the Court put it, deference to the prerogatives of Congress suggest that a more narrow interpretation is called for. Well, is that what lenity means? For sure, this is a broad statute. Yes. It doesn't seem very ambiguous. You know, lenity usually we're looking for a grievous ambiguity, sort of like the last case, where it's like, I don't know, you could read it this way, you could read it that way, what do we do? But that's not this statute. This statute, taken on its face, is just ungodly broad. I understand the Court's lenity doctrine to say that once you apply the normal tools of statutory interpretation, if you're really left with good arguments on both sides, there's real ambiguity, important ambiguity. In a criminal case, you go with the less harsh interpretation. And I do think that's true. So, for example, if we are left with some ambiguity as to your Aguilar analogy, that's when you would suggest perhaps lenity might be a tiebreaker. Yes. Yes, I do. And with respect to Justice Kagan's question, I think that these words read in isolation do suggest breadth. But reading them in isolation isn't the only step, obviously, of statutory interpretation. We have to look at it in context. And this is an incredibly strong case where context ought to matter, where you have Congress intentionally trying to bring together in one place, I believe is the phrase they used, all of the disparate tax crimes and recalibrate them as they sought fit. So, again, the statute read in isolation, I certainly take the point that it looks broad and strong and ungodly broad, to use your phrase, but that isn't the end of the statutory analysis. And once you do all of the steps, you look to where the language comes from, you look to what it might mean in context with other provisions right next door to it. At that point, we suggest we think we have the better of the argument, but at a minimum, at a bare minimum, there are competing interpretations that where the rule of lenity might apply. Sotomayor, there is something to be done about the context that this was drafted  As I look at the first half of the statute. Yes. Whoever corruptly or by force or threat of force, including any threatening letter or communication, endeavors to intimidate or impede any officer or employee of the U.S. acting in an official capacity. Yes. Or in any way corruptly or by force or threat of force, including any threatening letter or communication, obstructs or impedes or endeavors to obstruct or impede the due administration of this title. All of that seems to be geared towards some affirmative act aimed at an agent or the agency. That's where I got my earlier differentiation between an affirmative act and an omission act, because that doesn't have the flavor of force or threat of force or threatening all of the sort of active, violent or active, obstructive behavior that the examples set forth. I think I understand your question better now, and I have a couple of responses. I don't think the omission limitation will get or make sense of the tax criminal code for a couple of reasons. One, there are several misdemeanor offenses under the code that are not omission offenses. They are affirmative act offenses. And Congress showed a lot of thought making a false statement in connection with your taxes. That's an affirmative act. That is a misdemeanor unless you make that statement under the penalty of perjury. That is the difference between section 7207 and section 7206, subsection 1. That distinction between bad kinds of false statements, affirmative acts, is obviated, obliterated by an interpretation of obstruction that says when you make a false statement to the government, it has the effect of hindering, even if you didn't make it under the penalty of perjury. You might have made it not in that connection. So I don't think that an omissions-based approach makes or gets. Roberts Well, does it get us part of the way there, though? Because the officer clause, as Justice Sotomayor suggests, you have to actually hinder something the officer is doing. And could that same spirit or thought be thought to apply in the administration as well, that the IRS has to be doing something, your preceding thought is a doing, it is a thing, it is not just merely the IRS speaks of the pervasive, continuous, brooding omnipresence of tax liabilities, that there's an implication from the officer's clause that there's something more going on? Maybe that's not entirely helpful. Well, what I would say is if the thought is, by limiting obstruction to any affirmative act that hinders the IRS in any way, you have not brought the statute down. No, no, no, no, no, no. Limiting it to some affirmative act going on by the agency, I think, is what Justice Sotomayor is suggesting. The agency has to be doing something other than merely passively receiving taxes. Well, and of course, all of the conduct or omissions in this case are not in that context. Correct. It's a friendly amendment. That's not the rule we have adopted or endorsed at the court, but, and again, you would have some other. I have difficulty getting to what you have, because you haven't, as Justice Kagan pointed out, given us anything in the language to anchor this in. At least, Justice — it appears Justice Gorsuch and I are trying to look at the language. So what I would say in response to that is we would accept, because there is no act in question here that falls within that rule, so if you're asking me, do I think that, you know, would we accede to that, yes, we would, but I would point out that A win is a win is a win. A win is a win, for certain, but I just want to be certain that the Court fully appreciates that the line between when the IRS is doing something and not doing something at times can be a little bit blurry, and so, you know, I'd want to think about your proposal, but in any case, the key part is, unless there's a procedure You've just helped the government a lot with that statement. I hope I did not. The — our submission to this Court is that the government's interpretation in this case cannot be correct. We have offered language that comes directly from a predecessor statute dealing with proceedings, but I understand the Court's point that you might define proceedings a little more broadly than we do. I don't need to argue with you. Yeah. I'm just suggesting that the officer's clause might be a source of some aid to you. Agreed. That's all I'm doing. Absolutely agreed. Absolutely agreed. Now, the other part I wanted to make sure I said before I sat down was the government's interpretation in this case, although they push it now, is not one that they had invoked for nearly 30 years after the statute was enacted, although they claim it's — there is no ambiguity. There is no need for lenity. This is an interpretation that really came into fruition in the 90s and with increasing frequency in many, many cases, this is now being charged. And if the Court has no further questions, I will reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Mr. Parker. Mr. Chief Justice, and may it please the Court, I'd like at the very outset to address several of the things that my friend just said. He suggested that entirely lawful conduct would come within this statute. We think that that is incorrect. He suggested that this statute swallows all of the other misdemeanor provisions of the code. We think that that is incorrect. And I want to just take a moment to explain why we think the one example he does give. People go into shelters thinking they might be legal, might not. I'm going to roll my dice. Would that be a corrupt intent? I don't believe so, because there is not the specific intent to obtain an unlawful advantage. You have to not only be intending to advantage yourself, but know that the advantage is unlawful. And so that, I think, goes directly to the Court. Justice Breyer's snow shoveler, all right, I think he's a felon under your interpretation, because the person who's paying him knows that above $600 or whatever it is, I have to file a 1099. I'm not doing it. I'm doing it for an unlawful advantage for the snow shoveler. I know it. I'm a Federal felon for my friend's son's snow shoveling business. Right? I mean, the answer is yes, I think, isn't it? I'm waiting for a yes or a no. It may come within the scope, so that's a yes. Yes, but I think that the – I think it bears explanation as to why. I mean, first, I think that the threshold is actually $2,000. Breyer, I saw it said $600. Well, but that's if you're a business employing an independent contractor. So an individual, but I don't want to – I don't think that that matters. The point, though, is if you – How is somebody supposed to know when they're going to be in trouble here? Because it seems like paying cash can sometimes be a problem. That was part of the indictment and the jury instructions here. Or keeping records, failure to keep records that you didn't – that aren't lawfully obliged to be kept. You realize everybody in this audience now knows about the 1099 form. Well, they may be kept out of trouble as a result. But I think that the point – there are a couple of points that I think are important to make. The first is the mens rea requirement of this statute, as in all obstruction statutes, is critical, and it is very exacting. Government made some similar arguments in the honest services case, that everything can be cured by a mens rea requirement. We don't need to worry about actus reas. We'll tell you about the actus reas when we get there. We'll create a common law of honest services. And here it seems to me that's what the government's parallel argument, that we're not going to tell you what qualifies, we'll find out later, and sometimes it's going to be simply paying cash. Sometimes it's not going to be keeping records. And I just wonder, we're going to wind up in the same place, that you drive this thing to such enormous breadth in its interpretation that you're inviting a vagueness challenge at the back end. I disagree with that, Justice Gorsuch, and I'd like to just take a moment to explain why. So there are a number of limiting features of this statute that provide protection against precisely what you are explaining, and I think there are really three of them. The first is, there has to be a natural tendency to obstruct. This is the objective factual nexus that Aguilar says is baked into the term endeavor. Breyer, paying cash is enough, though. Not necessarily. But it is in this case. Actually, no. I don't think that's in the jury instructions. The paying cash was one of the means of the obstructive endeavor. It was a factual way that the individual was engaging in obstructive conduct. But you then have to determine that on the overall facts of this case, there was a natural tendency of that act to obstruct. You also have to show that the individual intended, specifically intended, to obstruct the administration of the code. And then third of all. Alito Before you go on, what do you do with the term impede? Well, I think that the term impede is largely coextensive with the term obstruct. Well, I don't know whether it does. It is. The dictionary definition of impede is interfere with or slow the progress of. Anything that makes the work of the IRS more difficult impedes the work of the IRS. Well, I would disagree with the statement that anything that makes the work of the IRS more difficult, and I think this goes to what I was just about to say. Why do you disagree with that? On what basis? So you have to have the natural tendency to obstruct. You have the mens rea. What do you have besides the mens rea? Well, you then have to be acting corruptly, which means that you have to have the specific intent to obtain an unlawful advantage. What do you have besides the mens rea? So let's say that you are engaged in lawful conduct. You are paying people in cash. Or you have structured your corporate form in a way that may make it more complicated for the IRS to figure out what your income and expenses are. Those things do not have a natural tendency to obstruct in and of themselves, because there is nothing that says that the administration of the code has to be made maximally easy. The only reason that those would end up having a — an obstructive effect is if you pair them with efforts to mislead or deceive the IRS into believing that the situation is not as it appears for an unlawful advantage. So you would be able to do that. Well, where does this come from in the language of the statute? And this — that's what troubles me about this. If I read impede to mean what it means in ordinary language, slow the progress of, you don't even have to impede. It's enough that you endeavor to impede. The only limiting thing I see here is corruptly. And you know the old — you know, the old saying, it's lawful for taxpayers to avoid taxes but not to evade taxes. So the line is — the line can be very — can be very thin. I'm not sure, actually, that it is all that thin. And I think that the — what is important to remember here is that there has to be an effort to actually convert that completely lawful conduct into something that has the natural tendency to obstruct or impede the IRS in an unlawful manner to obtain an unlawful benefit. Well, let me just give you a variation of the hypothetical that's already been given. So somebody — I — somebody offers to clean my gutters, and he says, $100 cash, $125 if you pay me by check. Is that a violation of this? No, not at all. Why not? Well, because there's no — What if I — what if I — you know, I understand why he's going to give me the discount by paying by cash, because he doesn't want to report it. Well, again, I think that you would then have to pair that with other efforts to deceive the IRS, as you did here. I mean, Mr. Banner, you know it. Why? Why isn't that sufficient in itself? Because there's no natural tendency of the mere fact that you give him $100 in cash to obstruct anything. What becomes obstructive about that is if that is then not reported to the IRS or is falsely reported to the IRS. I know he's not going to report, and he doesn't report. Well, I think that if you actually have the subjective specific intent that you are giving him this money with the intent that he is not going to report it to the IRS, and you are engaged in a common endeavor to obstruct the IRS's ability to duly administer the code, I think — But doesn't everybody know — doesn't everybody know when they're given an offer like this, you know, I'd rather have cash than a check, doesn't everybody know why people would rather have cash than a check? That may be true, but again, this is, I think, precisely why these sorts of things A, are not charged under this statute, but B, I think would be incredibly difficult to charge them under this statute. Why? Why? I mean, that's — you've used several times the word specific intent. So is it — specific intent to me in the law means knowledge that the particular action is unlawful. So are you saying the government's position is, we cannot — we cannot, under this statute, prosecute any person for anything he does unless that person knows that what he is doing, such as giving money to a person in cash, will be used to provide a benefit to that person, that is unlawful? He knows that doing this, what he is doing, is unlawful. And unless he knows that, the statute does not permit prosecution. I think that that is accurate. I mean, you — No, don't think it's accurate. I want to know if the government of the United States is saying this statute does not permit us to prosecute any person unless that person knows that the action he is taking, I'm repeating myself, such as giving the money in cash breaks the Federal law, and he also knows that what he is doing in giving that money breaks the Federal law. Well, he has to — If he does not know both of those things, he cannot be prosecuted under this statute. Now, I'm interested in the position of the United States on that question of interpretation. It is an interpretation of the word corruptly. Yes. Both of the things that — Yes. The answer is the position of the United States is what I just said is correct. No one can be prosecuted unless both those things are true. Both of those things, I think, are entirely subsumed by the definition of corruptly. You have to have the specific — I would like a yes or no answer to that. Yes. I mean, as I said — The answer is yes. Okay. Thank you. That's helpful. Certainly. So — May I ask you another question about this statute? The charge is that it would make any tax crime a misdemeanor felony. You could tack this obstruction charge onto any tax crime in the Code, and then you just get an additional penalty. Is that so? Let's say — well, let's take tax evasion, tax fraud. Wouldn't those also qualify as obstruction? Tax evasion may, because there you are willfully attempting to obtain — to evade a tax deficiency, although the — if you can prove tax evasion, there's little reason to prove obstruction. However, all of the other ones, the answer is no. If you look at the elements of Section 7212, they are different than the elements that you will find in any other criminal provision in the — in the Internal Revenue Code. They require corruption. They require an intent to obstruct. Other provisions require willful actions or willful failures to act. Is that the only difference? It's just the mens rea difference? Well, I think that's — yes. I mean, you also must have a natural tendency to obstruct. And, for example, failing to report your income, withholding that information that you are lawfully required to provide, I think, has that natural tendency. But if you look at these other provisions, take, for example, failure to file a tax return, there are going to be individuals — and in fact, I would wager to say that there are probably a large number of individuals who do not file their tax returns for reasons that have nothing to do with a specific intent to obtain an unlawful advantage. They may say — Like what? They may say, sometimes I owe a small amount of tax, sometimes I get a small refund, it's just not worth it to file. In that circumstance, there's no intent to obtain that unlawful advantage because you don't know whether you're going to be advantaged or not. I think the same thing could be said of, you know, failure to keep records. You destroy all of your records because they're just sitting around and it makes you upset to have so many records in your house. There's nothing — maybe that is a willful violation of a misdemeanor provision, but it wouldn't qualify under Section 7212. So you're any definitely concerned on the other side, I guess, which is — I think you used the word cantankerous in your brief. Is that right? That some people are just cantankerous, they're just not going to file. That perhaps that's a fairly small number of people compared to the situation where it is not terribly difficult for an assistant U.S. attorney to prove that some thing was done corruptly as opposed to willfully. It's kind of like the discussion we were having, that it is not hard to prove that paying in cash rather than a check when you get a discount was for a purpose to give a lawful advantage. Well, I don't — I would — I'm not sure that it's correct to say that these are rare cases. I would say that they are not, as a general matter, prosecuted and so they don't result in published opinions. But I would say that — I would say that the main concern here with kind of this over-criminalization of the tax code I don't think actually plays out in practice. Our — I can represent to the Court that our internal data indicates that obstruction charges are brought in approximately 4 percent of criminal tax cases. 4 percent. Is it still the published policy of the department to charge to the maximum extent reasonably possible? I believe that we, as a general matter, do seek out the most serious charge. However, especially in the — I thought that there was new guidance saying exactly that in the last year. Yes. I believe that that's correct. However, my point would be I don't think that there's any requirement that this particular provision be charged in any given case because of all the limitations.  Kennedy. Kennedy. I suppose we were to conclude that 80 percent of criminal tax misdemeanor violations could be accompanied by the felony charges contained within this statute. Would that be cause for our court to be concerned? Well, I'm not sure that it would necessarily be cause for concern. I think that would be surprising. However, I would note that, as this Court has explained in many cases, there is substantial overlap as a factual matter between the misdemeanor and felony provisions of the Internal Revenue Code. The Court has repeatedly said — You do not think we should be concerned if 80 percent of tax misdemeanor violations can be increased to a felony under this statute? That's not a cause for concern? Well, again, I'm not — Yes or no? I don't think it is, only because Congress has specifically provided an interlocking web of criminal penalties in this area, and it has done so precisely because we have a self-reporting system of taxation that depends upon — Just to be clear, it's not — my line of questioning is not to suggest bad faith on the part of the Department, but instead to suggest that that concern may have been the understanding of what Congress intended in this particular provision. Well, I think that that's a fair point, Mr. Chief Justice, but I think that it does not motivate the adoption of the limiting construction that Petitioner is proposing. Remember, Petitioner's — On that score, the verbs obstruct and impede, along with corruptly, the adverb, you normally expect there to be an object to them. I have to — because it is specific intent, as Justice Breyer pointed out, and you've got to know about something, and I have to intend to obstruct or impede that thing. And the government's interpretation of that thing, as I understand it, in its words, is the continuous, ubiquitous, and universal collection of taxes. Is that an object that's reasonably inferred? Can one — can one intend — know of and intend to impede or obstruct, corruptly or otherwise, something that's continuous, ubiquitous, and universal? Well, respectfully, Justice Gorsuch, I don't think that that is what we were saying. I — we're not saying — I think that's what you're briefed in opposition, right? But those words refer to the understanding of individuals about the fact that tax administration occurs on a routine and predictable schedule. But don't those verbs imply that there's something more direct as the object of my actions than something that's continuous, ubiquitous, and universal? Well, certainly, I think that's true. I think that you have to be specifically intending to obstruct the administration of the code. And the only point that we're making is that administration, unlike in the case of the due administration of justice, which involves discrete proceedings that many Americans will go their entire lives without having a connection to, the due administration of the Internal Revenue Code occurs on a routine and predictable schedule that people know is coming and can reasonably foresee. I think there are — Breyer. If you want, I want this answer. I don't want to interrupt your answer, but I want you to augment it. And you started to do that when you started to talk about — just what we were talking about. Look, if I put it differently, three principles. One, the Chief Justice, I think, enunciated, and it sounds comical if I'm going to say it, but it's very important. It is not an appropriate way of interpreting a statute. Look, perfect criminal statute. It is a crime to do wrong, in the opinion of the Attorney General. Don't worry. We'll interpret it properly. Even if you do interpret it properly, no. The answer under the Constitution, I think, is no. The second principle is right here in Aguilar, both of them, the second and third. We have traditionally exercised restraint in assessing the reach of a Federal prerogative of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand of what the law will do if a certain line is passed. From those principles, they conclude that a statute identically worded to this one, but for the word justice instead of title, requires a nexus be shown to a specific grand jury or jury proceeding, a court proceeding, even though, of course, you can read the word justice to include the investigators and many other things. All right. They are saying, in effect, take those same principles, that same limiting restriction, and do the same analogous thing here. Now, why not? I think there are a number of reasons not to do that. First of all, I think that the, as I just explained, the due administration of justice has always been understood to be something that occurs in discrete proceedings, unlike the administration of the Internal Revenue Code, but I think that that is confirmed by the history of Section 1503. The predecessor statute to Section 1503 specifically said that it only applied to the obstruction of officers or witnesses in any court of the United States or the due administration of justice therein. Now, when Congress recodified that provision in 1948, it modified the wording, but as this Court has repeatedly explained, that 1948 recodification was not intended to have any substantive effect on any of the provisions in the code. But Congress legislates against the backdrop of what's out there, and what was out there was our interpretation of those words requiring a nexus to an active proceeding, something more definite than something that's continuous, ubiquitous, and universal. And the Congress that passed this statute had that interpretation in its back pocket at the time, right? Well, but I would disagree with that, because in none of this Court's cases, in Pettybone, in Aguilar, Arthur Anderson, any of them, did this Court ever suggest that it is the phrase due administration, not the phrase due administration of justice, that carries that connotation. And I would also note that if that is, in fact, what Congress intended, it is very strange, because Congress had, just a few years earlier, enacted the statute that is now section 1505 cited in our brief. And that statute was specifically enacted to do exactly what you're suggesting, Justice Gorsuch. It was enacted to extend the provisions of section 1503 to pending proceedings before agencies of the United States, and that is what it says. If the Petitioner's interpretation were correct, then I think that there's really no reason for Congress to have enacted that, and it would also be awfully strange for Congress not to have borrowed that language. But I would also note that there are a number of, as I'm getting back to the point I was making previously, there is no reason to adopt his particular limiting construction, which, frankly, I think has no basis in the text, and does not solve these problems. Kagan, can I go back to the question of the Department's prosecution policy? And, you know, could you tell me, number one, what the current state of the Department's guidance is as to whether prosecutors are told to prosecute to the maximum extent allowed by law? And, number two, whether that would mean in this case that here I am, a prosecutor, and I think that some action falls within 7212, that I would be precluded from proceeding instead under 7203 or 7205 or 7207. My understanding is it is certainly the Department's position as a general matter that prosecutors should be charging the most serious offense that is readily provable on those facts. I couldn't say whether in any given case that would mean that section 7212 would have to be charged, because, as I said before, the facts of each case are going to be different and they're going to make the ability to prove section 7212 more or less possible. And there are going to be a number of cases where I think 7212 isn't even possible to even to allege. And so I think that – I'm not sure that it's – Kagan, I guess what I was saying is that if a prosecutor could proceed under 7212, that the prosecutor is being instructed that she must proceed under that section. If the facts of that case render a 7212 charge readily provable, then, yes, I think that prosecutors would do that. But I also think that that is not borne out by a concern that that is going to lead to just these sorts of charges becoming common and ubiquitous doesn't necessarily translate, because, as I said, our understanding is that it's only about 4 percent of cases, and that includes the most recent data from this – from this year. And so – Roberts, you used the phrase, readily provable. I just wanted, as a question of fact, is that – is that the term that's used or is that your summary of what you understand? I don't exactly remember the term that is used. But certainly, the government has to satisfy itself that it can prove beyond a reasonable doubt in that case that that crime has occurred. I also, though, want to – Alito, before you move off that point, why should we be comforted by the fact that prosecutorial discretion can be used in applying a statute, if this is a statute, with a really broad reach so that it reaches a lot of rather trivial conduct? Doesn't that make the situation worse rather than better? So then the prosecutors can decide where they want to use this. I don't think that it does. I mean, I think that the government has the responsibility to enforce Congress's statutes, and if Congress has provided that this particular conduct is criminal, then I think that that is appropriate. I don't think that there is anything that is particularly standardless or vague or otherwise uncertain about this particular statute. May I ask you – this was, I think, brought up by the opposing side – it is about 7212B. So the crime is rescuing seized property. Rescuing seized property carries a two-year penalty. Could the government tack on to that a 7212A obstruction of the administration of the IRS, IRC, so then – which is a three-year maximum? I suppose that if the government could prove that the person did so with corrupt intent – and I think that that's the main difference, obviously, between those two provisions in addition to the different statutory penalties – if we could prove that, then I think that would be available. I'm not sure why the government would want to tack one on to the other. I mean, this would all end up being charged as obstruction anyway, and so I'm not sure why that would make sense. But I think it's possible. There are – Ginsburg. If it is the highest penalty, it's three years under 7212A and only two years under 7212B, so with a maximum charging, why wouldn't it be? Well, because I think we would simply proceed under Section 7212A because that is the – carries the higher potential penalty. I would like to, in the time I have remaining, just be sure to make two points. The first is the Petitioner's proposed limiting construction, as we've said, it doesn't come – it doesn't have a basis in the text, but that doesn't mean that there aren't other potential limiting constructions that this Court could adopt, either in this case or in another appropriate case. I think, Justice Sotomayor, you alluded to the possibility of excluding pure omissions from the scope of the statute to try to differentiate between the misdemeanor provisions in this one. The Court actually engaged in a very similar analysis in Spies. That was the tax evasion case where it determined that omissions, pure omissions at least, would not qualify, and I think that that may be an appropriate limiting construction here. No one has suggested that, and I think the reason Petitioner hasn't is because it wouldn't really help him. The only two means of the endeavor in this case that were charged as failures to act, if you look at the evidence, it was clear that he was engaged in clear affirmative actions of destroying his records and other things. So that's one point I'd like to make. And the second is, one of the main problems here is that obstruction will – obstruction at the front end will often prevent the government from being able to charge appropriate offenses on the back end. And this case demonstrates that perfectly. The government would have brought a tax evasion charge in this case, but for the fact that Mr. Marinello so destroyed his records that it was unable to prove beyond a reasonable doubt that there was an actual tax deficiency. And so what I think Petitioner's proposed construction would do is it would effectively allow individuals to evade their taxes and then obstruct their way down to a misdemeanor charge, or if they are particularly good at it, maybe obstruct their way out of criminal penalties at all. And the government could do nothing about it unless the individual actually happened to be obstructing a pending audit or investigation. Audits and investigations are types of administration, but the Internal Revenue Code contains an entire subtitle called Procedure and Administration that lists in sequential chapters all of the different types of administration that occur. That includes the gathering of information that taxpayers must self-report. It includes the calculation and assessment of taxes, the collection of taxes. It would be very strange, I think, for Congress to have specified that with such clarity and then to have intended, by referencing the due administration of this title, to cut out all of that administrative functions and only focus on audits and investigations. Ginsburg. You gave the example of the omission that Justice Sotomayor had brought up. What else could limit the potentially huge scope of this provision? Fisherman. Well, I think that, I mean, I don't mean to repeat myself, but I do think, Justice Ginsburg, that a rigorous enforcement of the mens rea requirement does that. And this Court has repeatedly said that in the obstruction context, rigorous enforcement of mens rea requirements is what separates individuals who do not have or have not committed culpable conduct from those who do. And I don't think that this obstruction provision, may I conclude, I don't think this obstruction provision should be treated any differently. Thank you. Thank you, counsel. Mr. Hellman, four minutes remaining. Thank you, Mr. Chief Justice. Just a few quick points. I want to begin with the misdemeanors, the willful misdemeanors in the Code. I think I heard my friend on the other side suggest that it could very well be that a highly substantial number of those misdemeanors would qualify as obstruction, which is in itself a problem. And again, it requires this Court to think that the crimes that the Congress made the centerpiece of the Code, these willful offenses, really are only meant for the idiosyncratic case in which somebody intentionally violates the law, but not for any particular benefit. In the context of willful tax violations, I think in the substantial majority of cases, if not all, you're going to have a prosecutor who can say this was done for a reason, some unlawful benefit, which need not even be financial. Second, as to the safeguards that the mens rea requirement offers, in a world in which not consulting fully with an accountant, paying in cash, not keeping all records can become obstruction if they're done for the wrong reason, then you really are leaving it up to the prosecutor, who is required under current charging rules to charge as aggressively as possible to decide what was in the defendant's mind. Not every case goes to trial. Very few cases go to trial. With a felony conviction in the balance, you're going to find that this gives enormous leverage, even more so than they currently have, to prosecutors. Third, there is a suggestion here that the government needs this broad interpretation, otherwise wrongdoing will go unpunished. They can't point to a single case since 1954 where that was the case. It is certainly not the case here where the government told the jury repeatedly that Mr. Marinello had substantial gross income and took substantial personal income from that. Exhibits 21 and 22 below and pages 516 to 518 make that point very clearly. Fourth, the omissions theory as an alternative way of limiting this. Again, that doesn't make sense of the statutes that are misdemeanors like forcible rescue, like willful false statements that are affirmative acts, but less punishment than the 7212 obstruction charge. The last thing I want to say is we believe that based on the heritage of this language and the fact that obstruction statutes typically are focused on proceedings, that is the interpretation we've offered to the Court. But as Justice Gorsuch and Justice Sotomayor point out, there are other ways of reading the Officer's Clause in conjunction with the Administration Clause to come up with a more limited standard that does not cover any of the context, conduct in this case, act or omission.  Ginsburg. What is it? What do you derive from the Officer's Clause? I'm sorry? What is the limit that you are now proposing? The limit that I am understanding Justice Sotomayor and Justice Gorsuch to be suggesting is if you are – if your obstructive act or omission is in the context with some interaction with the IRS, not, say, failing to talk to an accountant on your own time, not paying someone in cash in your own home, but in some interaction with the IRS, that could be a limitation that would limit it. I think it – An interaction, although no audit, no proceeding is yet underway. Yes. Yes. That is the rule. Now, I think that if in practice, if you applied that, it would start to look an awful lot like a proceeding requirement, maybe a little bit broader around the edges, maybe a little bit more flexibility, but it would be, in substance, kin to it. And you're saying – And it's preferable given its heritage and for other reasons. Yes. So I think you're suggesting work with the word in the statute, administration. That's the word. All right. So if I start working with that word, do you have on the top of your head two or three cases or something I might read? Well, I think if you look at – Aguilar, I've read that, but what else? Sure. Aguilar. And if you look at the jury instructions in cases that have interpreted other obstruction statutes that apply to proceedings, which is never a defined term in those statutes – I don't have a case name for you – you'll see that they start to look like things, like an audit, where you have an individualized assessment or enforcement of some obligation enforceable by a subpoena power. Thank you. Thank you, counsel. The case is submitted.